```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

**MOUNTAIN STATE MECHANICAL**
**INSULATION, INC.,**

       **Plaintiff,**

**v.**                              **// CIVIL ACTION NO. 1:11CV180**
                                         **(Judge Keeley)**

**BELL CONSTRUCTORS, LLC,**
**a/k/a The Bell Company,**
**TURNER CONSTRUCTION, CO., and**
**SOUTHERN TIER INSULATION**
**DISTRIBUTORS, INC.**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER**
**GRANTING MOTION TO DISMISS [DKT. NO. 35] AND**
**DENYING AS MOOT MOTION TO STRIKE [DKT. NO. 39]**

Pending before the Court are the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment and Motion to Strike Plaintiff's Surreply Memorandum. For the reasons discussed below, the Court **GRANTS** the Motion to Dismiss, **DISMISSES** the plaintiff's Amended Complaint **WITH PREJUDICE**, and **DENIES AS MOOT** the defendants' Motion to Strike.

**I.**

The plaintiff, Mountain State Mechanical Insulation, Inc. ("Mountain State"), filed this action against the defendants, Bell Constructors, LLC ("Bell"), Turner Construction Co. ("Turner"), and Southern Tier Insulation Distributors, Inc. ("Southern Tier"), alleging violations of federal bidding laws, the Sherman Antitrust

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS           1:11CV180**

**MEMORANDUM OPINION AND ORDER**

Act, 15 U.S.C. § 1, and the West Virginia Antitrust Act, W. Va. Code § 47-18-1, related to Mountain State's lost opportunity to bid on a federally funded construction subcontract.

On September 14, 2010, Turner, the prime contractor for the United States Department of Justice in the construction of a new federal building in Clarksburg, Harrison County, West Virginia, awarded a subcontract to Bell to perform work on the project. Thereafter, in December of 2010, Bell advertised a "Notice to Bidders" in a Clarksburg newspaper, seeking subcontractors and suppliers, in particular those qualified as "Small Business [sic], Small Disadvantaged Businesses, Women Owned Small Businesses, Veteran Owned Small Businesses, Service Disabled Veteran Owned Small Businesses, and HUBZone Small Businesses." (Dkt. No. 17 at 4). The advertisement stated that bids would be accepted through December 31, 2010 and provided contact information for "further information concerning viewing plans and specifications and obtaining bid packages." Id.

Believing it met the profile described in the advertisement, Mountain State contacted Bell to request a bid package. In its view, because a woman owns 51% of Mountain State, it qualified as a "[s]mall business concern owned and controlled by women" under the Small Business Act. (Dkt. No. 25 at ¶ 15). Mountain State also

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS          1:11CV180**

**MEMORANDUM OPINION AND ORDER**

asserts that Harrison County, West Virginia qualifies as a Historically Underutilized Business Zone ("HUBZone") and it thus is eligible for federal contracts within that HUBZone. Although Mountain State allegedly made multiple requests for a bid package, Bell never sent one.

On January 9, 2011, Bell awarded the subcontract to Southern Tier, a company Bell had worked with before. Mountain State alleges that Bell and Southern Tier, with Turner's knowledge and consent, engaged in a "bid rigging" conspiracy to "unreasonably restrain trade" in Harrison County by agreeing to give the contract to Southern Tier based on their past working relationship, thereby "cutting out" all other eligible small businesses. (Dkt. No. 25 at § 46). On December 26, 2011, Mountain State filed an Amended Complaint[1] that asserted three causes of action: (1) declaratory relief under Fed. R. Civ. P. 57 that the defendants "violated applicable federal bidding laws;" (2) violation of the Sherman Antitrust Act, 15 U.S.C. § 1; and (3) violation of the West Virginia Antitrust Act ("WVATA"), W. Va. Code § 47-18-1. Pursuant

---

[1] The plaintiff's original Complaint alleged three additional claims for fraud, civil conspiracy, and breach of contract. The defendants moved to dismiss the Complaint in its entirety, and, during a hearing on December 13, 2011, the Court dismissed the fraud, civil conspiracy, and breach of contract claims without prejudice. It denied the motion to dismiss as to the declaratory judgment and antitrust claims, but granted the plaintiff leave to amend the Complaint to clarify these allegations. (Dkt. No. 23).

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS**             **1:11CV180**

**MEMORANDUM OPINION AND ORDER**

to Fed. R. Civ. P. 12(b)(6) and 56, the defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment on January 16, 2012 (dkt. no. 35). The plaintiff responded on January 18th (dkt. no. 36), and the defendants filed a reply on January 25th (dkt. no. 27). Then, fifty-four days later and, without requesting leave to do so, on March 12, 2012, Mountain State filed a surreply styled as a Memorandum of Law in Support of Plaintiff's Amended Complaint. (Dkt. No. 38). On March 14, 2012, the defendants filed a Motion to Strike Plaintiff's Surreply Memorandum. (Dkt. No. 39).

**II.**

The defendants argue that the Mountain State's Amended Complaint is subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim for relief that is plausible on its face.

**A.**

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient to state a plausible claim for relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). All well-pled factual allegations in a complaint are taken as true and construed in the light most favorable to the plaintiff. Nemet Chevrolet, Ltd. v. Consumeraf

4

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS**  1:11CV180

**MEMORANDUM OPINION AND ORDER**

fairs. com, Inc., 519 F.3d 250, 253 (4th Cir. 2009). Facts derived from sources beyond the four corners of the complaint also may be considered, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic," and facts subject to judicial notice under Fed. R. Evid. 201. Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)); see also Katyle v. Penn Nat. Gaming, Inc., 637 F.3d 462, 466 (4th Cir. 2011).

**B.**

Count I of the Amended Complaint seeks a declaration that the defendants violated "applicable federal bidding laws" when Bell ignored Mountain State's request for a bid package and awarded the subcontract to Southern Tier. (Dkt. No. 25 at 7-8). The defendants argue that the "federal bidding laws" on which Mountain State relies do not provide a private right of action and, thus, Mountain State lacks standing to assert its claim.

As a matter of law, "private plaintiffs may not bring suits to enforce statutes that do not provide a private cause of action." L.J. v. Wilbon, 633 F.3d 297, 307 (4th Cir. 2011) (citing Alexander v. Sandoval, 532 U.S. 275 (2001)). Here, Mountain State alleges that the defendants violated the Small Business Act ("SBA"), 15

5

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS              1:11CV180**

**MEMORANDUM OPINION AND ORDER**

U.S.C. § 631, et seq, the Competition in Contracting Act ("CCA"), 41 U.S.C. § 3101, et seq, and the Federal Acquisition Regulation ("FAR"), 48 C.F.R. § 44.000, et seq. These federal laws establish goals for federal government agencies to procure contracts with small businesses, but none provides a cause of action for a private plaintiff to sue a private contractor or subcontractor, even one employed by a government agency.

Mountain State alleges violations of two provisions of the SBA, Section 8(a) and the "liquidated damages provision" at 15 U.S.C. § 637(d). (Dkt. No. 25 at ¶ 17). It is well settled, however, that "the Small Business Act does not create a private right of action in individuals." Crandal v. Ball, Ball & Brosamer, Inc., 99 F.3d 907, 909 (9th Cir. 1996) (citing Aardwoolf Corp. v. Nelson Capital Corp., 861 F.2d 46, 48 (2d Cir. 1998); Integrity Mgmt. Int'l, Inc. v. Tombs & Sons, Inc., 836 F.2d 485, 487 n.4 (10th Cir. 1987); Tectonics, Inc. of Fla. v. Castle Constr. Co., 753 F.3d 957, 959 (11th Cir. 1985).

Neither of the provisions cited by the plaintiff imposes a duty on subcontractors like Bell to entertain bids from prospective subcontractors like Mountain State. Section 8(a) establishes the Business Development Program ("BD program"), which authorizes the Small Business Administration (the "Administration") to contract

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS**  1:11CV180

**MEMORANDUM OPINION AND ORDER**

with government agencies for performance of services and supplies and then to subcontract these duties to economically disadvantaged small businesses. 15 U.S.C. § 637(a). Eligible businesses must apply to the program in order to be considered as potential subcontractors, but there is no indication that Mountain State ever attempted to register. Moreover, even had Mountain State been registered in the BD program, the regulation clearly states that "[a]dmission into the 8(a) BD program does not guarantee that a Participant will receive 8(a) contracts." 13 C.F.R. § 124.501. As such, § 8(a) does not establish a remedy for Mountain State and is therefore inapplicable to the plaintiff's claims.

The liquidated damages provision of the SBA requires that all contracts between any federal agency and a prime contractor contain a clause obligating the prime contractor to carry out the federal government's policy of maximizing opportunities to subcontract with disadvantaged small business concerns "to the fullest extent consistent with the efficient performance of this contract." 15 U.S.C. § 637(d)(3). That clause also provides "for the payment of liquidated damages upon a finding that a prime contractor has failed to make a good faith effort to comply." Id. § 637(d)(4)(F). While this provision establishes a remedy for the government to seek damages where one of its contractors breaches its agreement to

comply with federal policy, it does not create a private cause of action for a prospective subcontractor such as Mountain State. See id.; Crandall, 99 F.3d at 909.

The plaintiff's attempt to assert an action under the CCA is also futile. The CCA obligates federal agencies to "obtain full and open competition through the use of competitive procedures" for government procurement contracts, 41 U.S.C. § 3301(a), but it does not provide for a private cause of action against a contractor. The CCA only imposes duties on government agencies, not private companies with whom the government has contracted. See id. Accordingly, Mountain State's attempt to assert a claim against these private defendants under the CCA is misplaced.

Finally, Mountain State cites two provisions of the FAR, but these also do not provide a remedy for its asserted claims. Although the Amended Complaint states that "Subchapter G, Part 44 establishes 'subcontracting policies and procedures,'" (Dkt. No. 25 at ¶ 18), this provision of the FAR actually sets forth the responsibilities of a federal administrative contracting officer in reviewing a prime contractor's purchasing system, and does not relate to the plaintiff's allegations. 48 C.F.R. § 44.301. Mountain State also mistakenly cites 13 C.F.R. § 125.6 for the proposition that "[p]rime contractors have 'limitations on subcontracting'

. . . which includes the HUBZone goal requirements for awarding federal contracts." (Dkt. No. 25 at ¶ 18). Contrary to this assertion, what § 125.6 limits is the amount of work that small business concerns already serving as prime contractors may subcontract to other parties. It does not provide a private cause of action for potential subcontractors and is entirely inapplicable to Mountain State's claims.

Mountain State has failed to articulate any statutory basis to sustain its claim for declaratory judgment because none of the "federal bidding laws" to which it cites provides for a private cause of action. Accordingly, Count I fails to state a plausible claim for relief and must be dismissed.

## C.

Counts II and III of the Amended Complaint alleges that the defendants violated the Sherman Antitrust Act and the WVATA by conspiring to "unreasonably restrain trade in the relevant marketplace, i.e., the HUBZone of Harrison County, West Virginia, by agreeing to give the contract to Southern Tier based on their past working relationship and cutting out all eligible qualified small businesses within the HUBZone." (Dkt. No. 25 at ¶ 46). The defendants argue that these claims should be dismissed because

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS**　　　　**1:11CV180**

**MEMORANDUM OPINION AND ORDER**

Mountain State cannot allege plausible facts in support its claim that the defendants imposed an unreasonable restraint on trade.

　　The Supreme Court of Appeals of West Virginia has held that courts should analyze the WVATA "under the guidance provided by federal law." Kessel v. Monongalia Cnty. Gen. Hosp. Co., 648 S.E.2d 366, 381 (W. Va. 2007); see W. Va. Code § 47-18-16. Accordingly, the adequacy of the plaintiff's WVATA claim rises or falls on the viability of its federal antitrust claim. To state a claim under 15 U.S.C. § 1, a plaintiff must prove (1) an agreement between at least two legally distinct persons or entities that (2) imposed an unreasonable restraint on trade. Dickson v. Microsoft Corp., 309 F.3d 193, 202 (4th Cir.) (citing Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 220-21 (4th Cir. 1994)).

　　With respect to the first element, "[p]roof of concerted action requires evidence of a relationship between at least two legally distinct persons or entities." Oksanen v. Page Mem. Hosp., 945 F.2d 696, 702 (4th Cir. 1991). The Fourth Circuit has recognized that an adequate allegation of an antitrust conspiracy must "provide, whenever possible, some details of the time, place and alleged effect of the conspiracy; it is not enough merely to state that a conspiracy has taken place." Estate Const. Co., 14

10

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS**          **1:11CV180**

**MEMORANDUM OPINION AND ORDER**

F.3d at 221. "Dismissal of a 'bare bones' allegation of antitrust conspiracy without any supporting facts is appropriate." Id.

Here, Mountain State's Amended Complaint alleges only that Bell and Southern Tier "agreed to unreasonably restrain trade" by awarding the subcontract to Southern Tier without entertaining bids from Mountain State and other eligible qualified businesses. (Dkt. No. 25 at ¶ 46). However, it pleads no facts in support of its accusation that the defendants conspired to violate the "federal competitive bidding laws" described in Count I. Id. Without more, Mountain State's conclusory allegation of an antitrust conspiracy fails because it lacks any detail about when, where, and how such a conspiracy took shape. See Estate Const. Co., 14 F.3d at 221.

Even if the Court could infer from the allegations in the Amended Complaint that a conspiracy did exist, Mountain State's claims fail to show that any agreement among the defendants imposed an unreasonable restraint on trade. To prove the second element of an antitrust claim, a plaintiff must establish that the defendants' conspiracy resulted "in 'unreasonable burdens on the free and uninterrupted flow' of goods and services in interstate commerce." Id. (citing Hosp. Bldg. Co. v. Rex Hosp., 425 U.S. 738, 746 (1976)). "Mere economic injury to [the plaintiff] alone is insufficient. Instead, [the plaintiff] must demonstrate an impact

11

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS          1:11CV180**

**MEMORANDUM OPINION AND ORDER**

on the competition as a whole within the relevant market." Patel v. Scotland Mem. Hosp., 91 F.3d 132 (4th Cir. 1996) (Table Decision), 1996 WL 383920, at *4.

Here, Mountain State's Amended Complaint alleges without factual support that Bell and Southern Tier conspired to "cut out" all other eligible businesses within "the HUBZone of Harrison County," and that, as a result of this conspiracy, "plaintiff has been injured and continues to be injured in its business and property in the loss of expenses incurred in preparing to bid and perform the contract and the value of the contract." (Dkt. No. 25 at ¶¶ 46, 54). Notwithstanding the inaccuracy of the assertion that Harrison County qualifies as a HUBZone,[2] the Amended Complaint fails to allege any facts in support of the allegation that the defendants exerted control over the relevant market. To establish an unreasonable restraint on trade, Mountain State must prove that the defendants played a "significant role" in the relevant market. Oksanen, 945 F.2d at 709. Mountain State's unsupported assertion that the defendants "cut out" other qualified bidders for the award of a single subcontract does not establish the necessary impact on competition as a whole within Harrison County's construction

---

[2] The Administration maintains a list of HUBZone-qualified counties on its website. Harrison County is identified as a "Non-Qualified" county. (Dkt. No. 35-8); available at HUBZone Mapping, SBA.gov, http://map.sba.gov/hubzone/maps/.

12

**MOUNTAIN STATE MECHANICAL v. BELL CONSTRUCTORS**            **1:11CV180**

**MEMORANDUM OPINION AND ORDER**

marketplace. See Patel, 1996 WL 383920, at *4. The Amended Complaint does not identify any role played by the defendants in the relevant market, much less a "significant role." See Oksanen, 945 F.2d at 709.

Additionally, the plaintiff's assertion that "[b]id rigging is a per-se violation of Section 1 of the Sherman Act" is misplaced. (Dkt. No. 25 at ¶ 44). "Bid rigging" may constitute an unreasonable restraint on trade only where "two or more persons agree that one will submit a bid for a project higher or lower than the others or that one will not submit a bid at all." United States v. W.F. Brinkley & Son Const. Co., Inc., 783 F.2d 1157, 1161 (4th Cir. 1986). Mountain State has made no such allegation against the defendants in this case. Instead, its claim of lost expenses resulting from the missed opportunity to submit a bid package focuses solely on personal economic injury rather than injury to the relevant marketplace, as required to sustain an antitrust claim. See Patel, 1996 WL 383920, at *4. Consequently, Mountain State has failed to state a plausible antitrust claim.

### III.

Finally, dismissal with prejudice is warranted. Mountain State's Amended Complaint would not be cured through additional amendment because "it is clear that amendment would be futile in

13

light of the fundamental deficiencies in plaintiff's theory of liability." Cozzarelli v. Inspire Pharms., Inc., 549 F.3d 618, 630 (4th Cir. 2008). Where "a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend." McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009).

**IV.**

For the reasons discussed, the Court:

1. **GRANTS** the defendants' Motion to Dismiss (dkt. no. 35);

2. **DISMISSES** the Amended Complaint **WITH PREJUDICE** and **ORDERS** that it be **STRICKEN** from the Court's active docket; and

3. **DENIES AS MOOT** the defendants' Motion to Strike (dkt. no. 39).

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk of the Court to enter a separate judgment order and to transmit copies of both Orders to counsel of record.

DATED: July 23, 2012

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE